Jan R. MORESI, Plaintiff,

v.

FAR WEST SERVICES, INC., a California corporation, Defendant.

Civ. No. 2834.

United States District Court
D. Hawaii.

Sept. 20, 1968.

Louis B. Blissard of Blissard & Conklin, Honolulu, Hawaii for plaintiff.

Genro Kashiwa, Honolulu, Hawaii for defendant.

## DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

PENCE, Chief Judge.

Plaintiff has brought suit and moved for a summary judgment on the following alleged facts and circumstances:

On June 15, 1966, defendant executed a promissory note in the sum of $53,000 providing for payment thereafter of principal, with earned interest, in 32 equal quarterly installments, on the 15th of September, December, March and June of each year until 1974. Payments were to be made "only in lawful money * * * at the law office of Attorney * * * Blissard, Suite 505 Trustco Building, Honolulu, Hawaii." The maker waived demand, protest and notice of protest of the note. The note also contained the following: "IN CASE OF DEFAULT for more than fifteen (15) days in the payment of any installment * * * the balance of said principal sum then remaining unpaid * * * shall at the option and upon the demand of the holder * * * become immediately due and payable * * *."

From the pleadings, affidavits and exhibits on file it appears:

The defendant met its quarterly payment schedule until March 1968. All payments were made by check and most by mail. No payment for the March quarterly installment had been made to attorney Blissard by April 8, 1968. The plaintiff, by letter dated April 8, 1968 and mailed on April 12, 1968 to "Far West Services Inc., c/o Mr. Richard A. Park, 609 Alakea Street, Honolulu" with carbon copies to Genro Kashiwa, attorney for the defendant, and to the same Richard A. Park "Vice-President * * * c/o Snack Shop #7, 2323 Kalakaua Avenue", undertook to exercise his option to have the entire unpaid balance become immediately due and payable. Plaintiff avers that Far West Services, Inc. had registered the Alakea Street address with the State of Hawaii, Department of Regulatory Agencies. Park is vice-president of the defendant corporation and as such had, along with its president, executed the note in question. Park is also defendant's agent designated with the Department of Regulatory Agencies to receive service of process on the corporation. "Snack Shop #7" is owned by defendant and is defendant's Honolulu headquarters.

Defendant corporation by affidavit of Park stated that the books of account of defendant for its operations were transferred to the home office of the corporation in Corona del Mar, California, some time about October 1967, and because of certain bookkeeping problems arising out of that transfer there was a "slight delay in the payment of the installment which became due on March 15, 1968." Park, in his affidavit, further stated that neither the defendant corporation nor he, Park, had ever used the Alakea Street address nor had the same ever been reported to the Department of Regulatory Agencies as being the corporation's address in Hawaii, and Park, while not denying in his affidavit that he received a copy of the letter, did however deny that the corporation had ever received the original of plaintiff's "April 8" letter.

Attorney Kashiwa's affidavit states that on April 4, 1968, attorney Blissard had, by phone, inquired of him concerning the amount of interest defendant had paid to plaintiff in 1967; that Blissard never mentioned the fact that he, Blissard, had not yet received the payment due on March 15.

The defendant's check for the March quarterly payment dated April 10, enclosed in an envelope bearing a Pitney-Bowes cancellation stamp of April 10, 1968, but carrying the Corona del Mar post office over-mark of April 14 PM 1968, was sent to "Mr. Louis B. Blissard, Suite 505 Trustco Bldg., 4133 Papu Circle, Honolulu, Hawaii." From Blissard's affidavit it was received by him at his home at 4133 Papu Circle on April 16, 1968.

April 14, 1968 was Easter Sunday. By Park's affidavit, defendant insists that the check dated April 10, 1968 was issued on that date, that it is the corporate practice that such checks are mailed the same day, that the main offices of the corporation are closed on Sundays, and that "it could not be possible that the checks were mailed on April 14, 1968", Easter Sunday. The defendant avers that all of the quarterly payments were paid by check.

Plaintiff never cashed this check but forthwith filed this suit to collect the total unpaid balance of the note. After defendant answered, as indicated above, plaintiff filed the instant motion for summary judgment.

The law is well settled that where the acceleration of the installment payments in cases of default is optional on the part of the holder, then the entire debt does not become due on the mere default of payment but affirmative action by the creditor must be taken to make it known to the debtor that he has exercised his option to accelerate, even though the note itself, as is the case here, waives notice of demand.[1] The holder must act in such a manner as to apprise the maker, effectively, that he has exercised the option.[2]

The law is also settled that if there is a tender of payment of the overdue sum before the option to declare the entire debt due has been exercised and implemented, such tender cuts off the right to exercise the option.[3]

Although the plaintiff here would have the court accept the April 14 over-mark by the Corona del Mar post office as proof positive that defendant's letter stamped by its P-B machine as of the date of April 10, was in fact never mailed until April 14, defendant's affidavits that the letter was not mailed on April 14 but was mailed on April 10 create another issue of fact vital to the disposition of plaintiff's motion for summary judgment.

As indicated above, it is not denied that defendant had made some of its prior payments to the plaintiff by check, by mail addressed to plaintiff's attorney Blissard at Suite 505 in the Trustco Building. By so accepting payments by check through the mail from the defendant, plaintiff would be deemed to have waived any right to object to the use of the same means and method of payment as to the payment in question. No default, then, would have automatically taken place because defendant chose to use the mails to make the payment on this occasion. If the check in payment was actually mailed on April 10 as defendant urges, then mail delivery and the payment in the usual course of business would normally have been made before plaintiff's notice of the exercise of his option was mailed on April 12, and if so, would foreclose this attempted acceleration.[4] Here, too, another factor enters into this problem. The record does not show at what time of day on Friday, Good Friday, April 12, 1968, the letter apparently misaddressed to Alakea Street was mailed, nor when the copies were mailed to vice-president Park at the defendant's Snack Shop address on Kalakaua Avenue. No showing has been made by plaintiff of the normal mail delivery to defendant's Kalakaua Avenue address over this weekend, nor the time at which the notice was delivered to Park, even presupposing that such notice to him personally under the circumstances was sufficient notice to defendant corporation.

Plaintiff states that his attorney Blissard did not receive defendant's check until the 16th of April. The court notes that two addresses were on defendant's envelope: one, Blissard's Trustco address, and below that, his home address on Papu Circle. Absent proof as

1. Carmichael v. Rice, 49 N.M. 114, 158 P.2d 290, 159 A.L.R. 1072.

2. Trigg v. Arnott, 22 Cal.App.2d 455, 71 P.2d 330.

3. 52 Am.Jur. Tender, Sec. 41, p. 245.

4. Console v. Torchinsky, 97 Conn. 353, 116 A. 613.

to whether this was the same manner in which defendant had addressed prior payments and whether the check, if delivered in the usual and expected course of the mails, should or would have arrived at the Trustco address on Monday, April 15, this court cannot determine if defendant's tendered payment as a matter of law can be deemed to have precluded implementation of plaintiff's intent to accelerate the payments due on the note.

Absent proof on all the above facts, this court cannot determine whether defendant's payment was timely made or not.

It thus appears that separate and apart from the disputed claim of the $818.81 deduction from the December 15, 1967 installment, which alone would prevent this court from giving a summary judgment for the total amount prayed for, there are still too many unresolved and disputed facts for this court to grant, at this time, plaintiff's motion for summary judgment.

Motion denied.